**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

**DONALD KOESTER, individually and
on behalf of others similarly situated,**

          **Plaintiff,**                          **Civil Action No. _____
JURY DEMANDED**

**v.**

**USAA GENERAL INDEMNITY COMPANY and
USAA CASUALTY INSURANCE COMPANY,**

          **Defendants.**

---

### CLASS ACTION COMPLAINT

---

       COMES NOW Plaintiff Donald Koester, individually and on behalf of all others similarly situated, and states and alleges the following for his Complaint against USAA General Indemnity Company and USAA Casualty Insurance Company:

### PARTIES, RESIDENCY, JURISDICTION AND VENUE

       1.       Plaintiff Donald Koester is a citizen and resident of Memphis, Shelby County, Tennessee.  At all times relevant hereto, Plaintiff owned a home located at 2539 Inverary Drive, Memphis, Tennessee (the "Insured Premises").

       2.       Defendant USAA General Indemnity Company ("USAA General") is organized under the laws of the State of Texas and headquartered in San Antonio, Texas. USAA General is authorized to sell property insurance policies in the State of Tennessee and is engaged in the insurance business in the State of Tennessee, including Shelby County.

       3.       Defendant USAA Casualty Insurance Company ("USAA Casualty") is organized under the laws of the State of Texas and headquartered in San Antonio, Texas. USAA Casualty is

authorized to sell property insurance policies in the State of Tennessee, and is engaged in the insurance business in the State of Tennessee, including Shelby County.

4.      Both USAA General and USAA Casualty (collectively, "USAA") are subsidiaries of United Services Automobile Association, which owns and controls both Defendants.

5.      USAA engaged in the challenged claims handling practice in a uniform manner and pursuant to a uniform policy.

6.      Both USAA General and USAA Casualty are related in such a manner that a single resolution of this dispute with respect to all defendants would be expedition and efficient.

7.      USAA operates a centralized adjustment operation in which its adjusters work on claims for multiple different entities, using the same policies and procedures challenged in this case for adjusting insurance claims.

8.      The events giving rise to the individual claims that are the subject of this action occurred in the Western Division of the Western District of Tennessee.

9.      On information and belief, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

10.     This Court has personal jurisdiction over USAA General and USAA Casualty because they have availed themselves of the privilege of conducting business and issuing insurance contracts covering structures in the State of Tennessee.

## FACTS

### A.  The Property Insurance Policy and Casualty Loss

11.     At all times relevant hereto, Plaintiff was the insured pursuant to an insurance contract whereby USAA agreed to insure, *inter alia,* Plaintiff's home located on the Insured

Premises against property damage, bearing Policy No. GIC03748341090A (the "Policy").  As relevant hereto, the term of the Policy was August 19, 2016 to August 29, 2017.

12.     A copy of the Policy is attached hereto as Exhibit "1".

13.     The Policy provided insurance coverage for direct physical loss to the buildings located on the Insured Premises, except as specifically excluded or limited by the Policy.

14.     This lawsuit only concerns property insurance coverage for buildings, and *not* personal contents, such as clothes and furniture.

15.     Pursuant to the Policy, Plaintiff paid USAA an annual premium in exchange for insurance coverage.  The required premiums were paid at all times relevant to this Complaint.

16.     On or about July 30, 2017, Plaintiff's home located on the Insured Premises suffered a fire loss (the "Loss").

17.     The Policy was in effect at the time of the Loss, and the Loss is compensable under the terms of the Policy.  As it relates to the Loss, there is no applicable exclusion.

18.     Plaintiff promptly notified USAA of the Loss and made a claim against the Policy.

19.     After its inspection, USAA determined that the Loss was covered by the terms of the Policy.

20.     For the home, USAA calculated its actual cash value ("ACV") payment obligation to Plaintiff by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), then subtracted depreciation.

21.     The Policy defines ACV as "the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence."

**B. USAA's Calculation of Plaintiff's ACV Payment**

22.     In adjusting Plaintiff's claim, USAA affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate the losses and make its ACV payment to Plaintiff.

23.     USAA did not calculate any portion of Plaintiff's casualty loss by reference to or analysis of the alleged increases or decreases in the market value of his property, or the market value of any portion of his property.  USAA did not conduct an appraisal of the market value of any portion of Plaintiff's property.

24.     USAA has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the methodology actually used by USAA, specifically including any market value methodology.

25.     USAA used commercially-available computer software to make its RCV, depreciation and ACV calculations.

26.     USAA calculated the RCV of Plaintiff's damaged property at $253,724.17.

27.     USAA then calculated the depreciation for Plaintiff's damaged property at $81,732.45 and, after subtracting the $1,000.00 deductible, issued Plaintiff an ACV payment in the amount of $169,159.58.

28.     Copies of USAA's calculation is attached as Exhibit "2".

29.     Plaintiff was underpaid on his ACV claim as more fully described below.

**C. USAA's Practice of Depreciating Labor**

30.     In this pleading, whenever reference is made to depreciating "labor," "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs necessary to restore Plaintiff's property to its condition immediately prior to the Loss, as well

as "removal" costs to remove damaged property, under the claims estimating software program described below.

31.    When calculating Plaintiff's ACV benefits owed under the Policy, USAA withheld the costs of labor necessary to repair or replace Plaintiff's properties, even though labor does not depreciate in value over time. USAA depreciated costs associated with non-materials, *i.e*., labor, throughout its ACV calculations.

32.    USAA's withholding of labor costs associated with the repair or replacement of Plaintiff's properties resulted in Plaintiff receiving payment for the loss in an amount less than Plaintiff was entitled to receive under the Policy. USAA breached its obligations under the Policy by improperly depreciating the cost of labor and other non-materials when calculating its ACV payment obligations.

33.    Plaintiff himself cannot determine the precise amount of labor that has been withheld as depreciation based upon the written estimate provided by USAA.

34.    Plaintiff concedes that finished goods and construction materials can diminish in value over time due to use, wear, obsolescence, and age. Therefore, finished goods and construction materials depreciate. In contrast, both removal labor and installation labor are not susceptible to aging or wear. Their value does not diminish over time. Conceptually, practically, and under common understanding, depreciation cannot be applied to labor to remove damaged property or repair damaged property in the context of indemnification insurance.

35.    Labor, by its nature, does not depreciate, and an insurer therefore may not "depreciate" labor.  For example, materials used in the repair or replacement of a roof (roofing shingles) diminish in value over time due to the wear that age and use inflict on them.  In contrast, prospective removal and repair labor is not susceptible to aging or wear, it does not lose value over

time, and there is no depreciable life of labor. Labor's value does not diminish over time; only the materials depreciate.

36.     USAA's practice of withholding labor costs as depreciation is inconsistent with the universally accepted premise that the fundamental purpose of property insurance is to provide indemnity to policyholders. To indemnify means to put the insured back in the position he or she enjoyed before the loss—no better and no worse. A policy, like USAA's policy, that provides for payment of the ACV of a covered loss is an indemnity contract because the purpose of an ACV payment is to make the insured whole after the loss that occurred.

37.     While an insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold removal and repair labor as depreciation.  USAA's failure to pay the full cost of the labor necessary to return Plaintiff back to his pre-loss condition left Plaintiff under-indemnified and underpaid for the Loss.

38.     USAA materially breached its duty to indemnify Plaintiff by withholding labor costs associated with repairing or replacing Plaintiff's property in its ACV payment, thereby paying Plaintiff less than he was entitled to receive under the terms of the Policy.

**D.   The Length Of The Putative Class Period**

39.     Any affirmative defenses that may be plead seeking to limit the length of the putative class period are subject to judicial doctrines concerning the accrual of the putative class members' claim and the concealment of the same by USAA.

40.     USAA concealed its practice of withholding labor as depreciation from both Tennessee state regulators and putative class members.

41.     Specifically, as it relates to Tennessee regulators, in 2008, the National Association of Insurance Commissioners ("NAIC survey") published a copyrighted survey of state insurance

departments and their respective positions on the depreciation of labor.  The Tennessee Department of Insurance ("TDOI") formally responded to the survey.

42.    As a prominent national property insurer that does a significant amount of business in Tennessee, USAA knew or should have known of the existence of the NAIC survey and the TDOI's responses to the same.

43.    First, the NAIC survey asked Tennessee regulators "Does your state allow the depreciation of labor under an actual cash value (ACV) loss settlement provision for property?" The TDOI stated in response: "It is generally the belief that labor is not depreciable, but the Department has no written position on the matter.  We believe there is some case law supporting this aspect.  To our knowledge, this is not a problem here."

44.    Second, the survey also asked Tennessee regulators "Is depreciation for labor allowed on an ACV roof if it is totally replaced?"  The TDOI stated in response: "We do not believe insurers are depreciating labor unless their provision calls for it.  At least one insurer has a policy provision addressing this issue."

45.    By at least 2008 then, USAA was aware of or should have been aware that the TDOI took a position against the depreciation of labor based upon the NAIC 2008 survey, and that the TDOI believed that insurers were not engaging in the practice within the State of Tennessee unless their policy language called for labor depreciation.

46.    At all times relevant hereto, USAA's insurance policies neither addressed nor called for removal or repair labor to be withheld as depreciation.  Similarly, USAA's marketing materials did not address this practice, and consumers were not told of this practice when purchasing USAA property insurance products.  USAA never notified the TDOI that its understandings as set forth in the NAIC survey were incorrect, and that USAA was in fact

withholding labor within the State of Tennessee under property policies that did not call for that practice.

47.     To further conceal its practice of withholding labor as depreciation, and to avoid any disputes with regulators and policyholders who made claims, USAA unfairly used its claim estimating software to conceal its practice from policyholders.

48.     Like most property insurers, USAA used a product called Xactimate to determine the amount of depreciation to apply to a claim.  Xactimate is used by both insurers and contractors to calculate the cost of rebuilding or repairing damaged property.  Xactimate uses "line item" pricing to determine repair costs.

49.     For all line items, Xactimate allows an insurer to depreciate labor by toggling on or off depreciation settings called "depreciate removal" and "depreciation non-material."  If both of these settings are toggled on, then all line items will show the withholding of labor as depreciation.

50.      USAA affirmatively hid its use of these two labor depreciation settings in Xactimate from both policyholder claimants and Tennessee regulators, if any, that may have investigated the same, by not depreciating "pure labor line items" that would obviously reflect the withholding of labor.

51.     For example, in Ex. "2", USAA did not depreciate the removal labor associated with the pure labor line item "Demolish/remove – bedroom/room."  This would lead a regulator or policyholder to believe that USAA was not depreciating any labor.  However, in other line items in the estimate, USAA did use the depreciation setting to withhold labor when the line item reflected the mixed use of materials and labor.

52.     In other words, USAA only withheld labor from line items in estimates provided to policyholders where the policyholder could not detect the practice of withholding labor as

depreciation. USAA did not make a principled decision to depreciate labor for Plaintiff's claim, but rather USAA only depreciated labor in line items where it would be difficult if not impossible to detect the practice.

53.    As a result, USAA purposely intended to prevent an ordinary consumer or insurance regulator to know that USAA depreciated labor, and not merely materials, when making ACV payments to policyholders.

54.    At all times relevant hereto, USAA was under an affirmative duty to fairly disclose the manner in which it calculated ACV payments to policyholders. In addition, when providing estimates to Plaintiff and similarly situated policyholders, USAA was under a duty to be truthful, and to not deceive by omission.

55.    USAA was in a superior position over policyholders to know that it was depreciating labor through Xactimate. USAA controlled the settings for the software, which expressly permit a company to properly limit depreciation to materials only.

56.    The practice was therefore not disclosed in the insurance policy, in the claim estimate, in the marketing materials nor in the Tennessee regulatory filings of USAA. The affirmative steps USAA took to conceal the cause of action for breach of the insurance contract were material facts that a reasonable person would have considered important in deciding whether to purchase insurance and/or accept ACV payments from USAA.

57.    The concealment of information in estimates was performed by USAA with the intent that policyholders believed that only materials were being depreciated when receiving ACV claim payments, and that policyholders would not know that their claim payments were actually diminished by the withholding of repair labor through the unfair manipulation of the Xactimate

software and that policyholders would not contest the concealed practice in court or through regulatory action.

## AMOUNT IN CONTROVERSY

58.    Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

### A.  Tennessee Damages and Injunctive Relief Class

59.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of himself and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.   Only to the extent it is a requirement under applicable law, the class is ascertainable.

60.    The proposed class that Plaintiff seeks to represent is defined as follows:

All USAA policyholders under any property policies issued by USAA who made: (1) a structural damage claim for property located in the State of Tennessee; and (2) which resulted in an actual cash value payment from which "non-material depreciation" was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of "non-material depreciation" causing the loss to drop below the applicable deductible.

In this definition, "non-material depreciation" means application of either the "depreciate removal" and/or "depreciate non-material" option settings within Xactimate software.

The class period for the proposed class is the maximum time period as allowed by applicable law.

The class excludes all claims arising under policy forms expressly permitting the "depreciation" of "labor" within the text of the policy

form and any claims in which the actual cash value payments exhausted
the applicable limits of insurance

61.     Plaintiff reserves the right to amend the definition of the proposed class. The

following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and

affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and

(3) the Court to which this case is assigned and its staff.

62.     Members of the putative class as defined all have Article III standing as all such

persons and entities, at least initially, received lower claim payments than permitted under the

policy.  Certain amounts initially withheld as depreciated labor may be later repaid to policyholders

upon further adjustment of the claim.  However, policyholders who have been subsequently repaid

for initially withheld labor depreciation still have incurred damages, at the least, in the form of the

lost "time value" of money during the period of withholding, *i.e.*, interest on the amounts

improperly withheld, for the time period of withholding.

63.     The members of the proposed class are so numerous that joinder of all members is

impracticable. Plaintiff reasonably believes that hundreds or thousands of people geographically

dispersed across Tennessee have been damaged by USAA's actions.  The names and addresses of

the members of the proposed class are readily identifiable through records maintained by USAA

or from information readily available to USAA.

64.     The relatively small amounts of damage suffered by most members of the proposed

class make filing separate lawsuits by individual members economically impracticable.

65.     USAA has acted on grounds generally applicable to the proposed class in that

USAA has routinely depreciated labor costs in its adjustment of property damage claims under its

policies of insurance.  It is reasonable to expect that USAA will continue to withhold labor as

depreciation to reduce the amount it pays to its insureds under these policies absent this lawsuit.

66.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.  Whether USAA's policy language allows it to withhold labor as depreciation in its calculation of ACV payments;

b.  Whether USAA's policy language is ambiguous concerning the practice of withholding labor as depreciation when calculating ACV payments, and, if so, how USAA's insurance policies should be interpreted;

c.  Whether USAA's withholding of labor as depreciation in its calculation of ACV payments breaches the insurance policies;

d.  Whether USAA has a custom and practice of withholding labor as depreciation in its calculation of ACV payments;

e.  Whether Plaintiff and members of the proposed class have been damaged as a result of USAA's withholding of labor as depreciation in its calculation of ACV payments;

f.  Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act;

g.  Whether Plaintiff and members of the proposed class are entitled to equitable relief in the form of specific performance, unjust enrichment, declaratory relief or restitutionary damages; and

67.     Plaintiff's claims are typical of the claims of all proposed class members, as they are all similarly affected by USAA's custom and practice concerning withholding labor as depreciation. Further, Plaintiff's claims are typical of the claims of all proposed class members because their claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

68.     Plaintiff and his counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the

proposed class they seek to represent. Plaintiff has retained lawyers who are competent and experienced in class action and insurance litigation.  Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class while recognizing the risks associated with litigation.

69.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed class members in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

70.    In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

71.    Questions of law or fact common to Plaintiff and the proposed class members, including those identified above, predominate over questions affecting only individual members

(if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amounts due to many individual proposed class members are likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual proposed class members to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by USAA's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

72.     Class certification is further warranted because USAA has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**B. Tennessee Issues Class**

73.     Plaintiff seeks, in the alternative, certification of a Tennessee Damages and Injunctive Relief Class, a Tennessee Issues Class.

74.     Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

75.     In an effort to materially advance the litigation as a whole, pursuant to Rule 23(c)(4), Plaintiff brings this action on behalf of themselves and of all others similarly situated to resolve, *inter alia*, several important issues:

      a.  Whether USAA's policy language allows USAA to withhold labor as depreciate when making ACV payments;

   b.   Whether USAA's policy is ambiguous concerning the same;

   c.   Whether USAA's withholding labor as depreciation in its calculation of ACV
        payments breaches the insurance policies;

   d.   Whether USAA has a custom and practice of withholding labor as depreciation in
        its calculation of ACV payments;

   e.   Whether Plaintiff and members of the proposed class are entitled to a declaration,
        as well as potential supplemental relief, under the Declaratory Judgment Act; and

   f.   Whether any of USAA's potential affirmative defenses apply in whole or in part.

76.    Upon resolving some or all of the foregoing issues in favor of the policyholders,
the Court could thereafter certify a Tennessee Damages and Injunctive Relief Class. Even if the
Court did not certify a damages and injunctive relief class, at the least, an Issues Class would
permit individual class members to be able to rely upon the preclusive effect of the determination
that USAA's custom and practice of depreciating labor costs in calculating ACV payments is
unlawful to then individually litigate specific issues such as damages.

77.    The Issues Class is properly brought and should be maintained as a class action
under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality,
and adequacy.

78.    Individual joinder of the members of the Issues Class would be wholly
impracticable. As previously stated, Plaintiff reasonably believes that thousands of people
geographically dispersed across Tennessee have been damaged by USAA's conduct as described
herein. Thus, the numerosity element for class certification is met.

79.    Questions of law and fact are common to the Issues Class. As this is an issues class
under Rule 23(c)(4), there are by definition common questions of law applicable to all class
members.

80.     Plaintiff's claims are typical of the Issues Class because his claims arise from the same course of conduct by USAA, *i.e.*, its uniform custom and practice of depreciating labor costs in calculating ACV payments to its Tennessee policyholders, and are based on the same factual and legal theories. Plaintiff's claims are, therefore, typical of the Issues Class.

81.     Plaintiff will fairly and adequately represent and protect the interests of the Issues Class. His interest in vindicating these claims is shared with all members of the Issues Class and there are no conflicts between the named Plaintiff and the putative class members. In addition, Plaintiff is represented by counsel competent and experienced in class action litigation and who also have no conflicts.

82.     The Issues Class is properly brought and should be maintained as a class action under Rule 23(b) because an issues class action in this context is superior. Pursuant to Rule 23(b)(3), common issues predominate over any questions affecting only individual class members. Proceeding with an issues class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated policyholders to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

## COUNT I
## BREACH OF CONTRACT

83.     Plaintiff restates and incorporates by reference all preceding allegations.

84.     USAA entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between USAA, Plaintiff and members of the proposed class, as well as the manner in which claims for covered losses are handled.

85.     The policies of insurance between USAA and Plaintiff and the other proposed class members are binding contracts under Tennessee law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

86.     USAA drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation.

87.     In order to receive ACV claim payments, Plaintiff complied with all material provisions and performed all of his respective duties with regard to his insurance policy.

88.     The policies of insurance USAA issued to Plaintiff and members of the proposed class state that, in the event of a partial loss, USAA may fulfill its full or initial contractual obligation to an insured party by paying the ACV of the loss. At all times relevant hereto, USAA's custom and practice has been, and is, to make such payments based upon USAA's calculation of the ACV for the partial loss, less any applicable deductible.

89.     USAA breached its contractual duty to pay Plaintiff and members of the proposed class the ACV of their claims by unlawfully withholding labor as depreciation.

90.     USAA's actions in breaching its contractual obligations to Plaintiff and members of the proposed class benefitted and continue to benefit USAA. Likewise, USAA's actions damaged and continue to damage Plaintiff and members of the proposed class.

91.     Additionally, USAA breached the Policy by failing and refusing to promptly pay the amounts individually owed to Plaintiff as required by the terms of the Policy.  Specifically, Plaintiff submitted repair estimates for the damage caused by the Loss that were significantly higher than that paid by USAA.  As a result, Plaintiff has been damaged in the amount of the unpaid portion of his claim, including but not limited to the actual cash value of the damage to his buildings.

92.     USAA's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

93.     In light of the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts USAA unlawfully withheld from their ACV payments as labor cost depreciation.

94.     Plaintiff and members of the proposed class seek any and all relief as may be permitted under Tennessee law to remedy the ongoing breaches of contract.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF

95.     Plaintiff restates and incorporates by reference all preceding allegations.

96.     This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether or not further relief is or could be claimed.

97.     A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

98.     Plaintiff and members of the proposed class have complied with all relevant conditions precedent in their contracts.

99.     Plaintiff seeks, personally and on behalf of the proposed class, a declaration that

USAA's property insurance contracts prohibit the withholding of labor costs as depreciation when adjusting partial losses under the methodology employed here.

100.     Plaintiff further seeks, personally and on behalf of the proposed class, any and all equitable relief available under the law that the Court deems necessary and proper to the administration of justice, including, but not limited to, identifying and locating policyholders, and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion by USAA in engaging in the conduct described herein, as may be permitted by law.

101.     Plaintiff and members of the proposed class have suffered injuries.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

1.     Enter an order certifying this action as a class action, appointing Plaintiff Donald Koester as the representative of the class, and appointing Plaintiff's attorneys as counsel for the class;

2.     Enter a declaratory judgment, declaring that USAA's practice of withholding labor costs as depreciation is contrary to and breaches the insurance policy issued to Plaintiff and members of the class;

3.     Enter a preliminary and permanent injunction and equitable relief against USAA and its officers, agents, successors, employees, representatives, and any and all persons acting in

concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein;

4.    Enter an order that USAA specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5.    Award compensatory damages for all sums depreciated as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiff and members of the class;

6.    Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the class;

7.    Pre- and Post-Judgment interest; and

8.    Grant such further and additional relief as the Court deems necessary and proper.

GILBERT McWHERTER
SCOTT BOBBITT PLC

By: _/s/ J. Brandon McWherter_____
J. BRANDON McWHERTER - #21600
341 Cool Springs Blvd, Suite 230
Franklin, TN  37067
(615) 354-1144
bmcwherter@gilbertfirm.com

CLINTON H. SCOTT - #23008
GILBERT McWHERTER SCOTT BOBBITT PLC
54 Exeter Road, Suite D
Jackson, TN 38305
(731) 664-1340
cscott@gilbertfirm.com

ERIK D. PETERSON (KY Bar 93003)
*pro hac vice to be filed*
MEHR, FAIRBANKS & PETERSON
 TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
(859) 225-3731
edp@austinmehr.com

T. JOSEPH SNODGRASS (MN Bar 0231071)
*pro hac vice to be filed*
LARSON· KING, LLP
30 7th Street E., Suite 800
St. Paul, MN 55101
(651) 312-6510
jsnodgrass@larsonking.com

***Attorneys for Plaintiff and
Proposed Class Representative***